**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.              Civil Action No. 3:18-cv-01289

MATTHEW MALLORY,
CAMO HEMP WV LLC,
GARY KALE, GRASSY RUN
FARMS, LLC, their agents,
servants, assigns, attorneys, and all
others acting in concert with the
named defendants,

   Defendants.

**MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANTS
MATTHEW MALLORY AND CAMO HEMP WV LLC TO DISSOLVE EX PARTE
RESTRAINING ORDER AND IN OPPOSITION TO PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

  None of the defendants in this case have been issued a DEA registration for Schedule I substances as required under 21 U.S.C. §§ 822–23 of the Controlled Substances Act ("CSA"). As a result, they are not authorized under the CSA to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense cannabis sativa L. or "marihuana" (marijuana) as defined by the CSA in 21 U.S.C. § 802(16). Since they did not have a Drug Enforcement Administration ("DEA") issued registration for Schedule I substances under the CSA, they could only acquire cannabis sativa L. seed as an agent for another person or entity who had been issued a valid registration for that Schedule I substance by the DEA. See 21 U.S.C. § 822(c).

In this case, the West Virginia Department of Agriculture ("WVDA") created a pilot project program under 7 U.S.C. § 5940.  The WVDA applied for and was issued a registration by the DEA limited to the importation of Schedule I cannabis sativa L. seed from foreign countries.  Under the CSA, the WVDA could only manufacture, distribute, or dispense controlled substances to the extent authorized by its DEA registration and then only with regard to the Schedule I substance involved.  See 21 U.S.C. § 822(b), 823(c).  Here, the DEA registration issued to the WVDA only allowed the WVDA to import cannabis sativa L. from foreign countries and distribute it to participants of the pilot project program.  The DEA registration issued to the WVDA did not allow the WVDA to procure the cannabis sativa L. from any other source.  See ECF No. 19-7.  Thus, the acquisition of the cannabis sativa L. seed involved in this case by the defendants across state lines in the United States for industrial hemp growth is a violation of the CSA because that acquisition is beyond the scope of the DEA registration issued to the WVDA.  See United States v. Moore, 423 U.S. 122, 131-32 (1975) (as set forth in 21 U.S.C. § 822(b), the registration of controlled substances issued by the DEA is a "qualified authorization of certain activities" and persons or entities issued DEA registrations can only acquire, possess, and distribute controlled substances within the limits of their DEA issued registration).[1]

## II.  LEGAL BACKGROUND—THE LIMITED EXCEPTION CREATED BY THE AGRICULTURAL ACT OF 2014

In the Agricultural Act of 2014, Congress created a special exception to the CSA to allow states to enact laws to allow certain institutions of higher education and state departments of agriculture to grow or cultivate "industrial hemp" for research purposes or as part of an

---

[1] The defendants have the burden of proof under the CSA to establish that the cannabis sativa L. seed they acquired across state lines is not subject to the CSA.  See 21 U.S.C. § 885(a)(1); 21 C.F.R. § 1308.35.  As explained in this memorandum in opposition, that is a burden they cannot meet under federal law.

agricultural pilot program in which the "industrial hemp" is grown for agricultural or academic research. This exception was codified at 7 U.S.C. § 5940:

> (a) In general
>
> Notwithstanding the Controlled Substances Act (21 U.S.C. 801 *et seq*.), chapter 81 of Title 41, or any other Federal law, an institution of higher education (as defined in section 1001 of Title 20) or a State department of agriculture may grow or cultivate industrial hemp if--
>
>> (1) the industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and
>>
>> (2) the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs.
>
> (b) Definitions
>
> In this section:
>
>> (1) Agricultural pilot program
>>
>> The term "agricultural pilot program" means a pilot program to study the growth, cultivation, or marketing of industrial hemp--
>>
>> (A) in States that permit the growth or cultivation of industrial hemp under the laws of the State; and
>>
>> (B) in a manner that--
>>
>>> (i) ensures that only institutions of higher education and State departments of agriculture are used to grow or cultivate industrial hemp;
>>>
>>> (ii) requires that sites used for growing or cultivating industrial hemp in a State be certified by, and registered with, the State department of agriculture; and
>>>
>>> (iii) authorizes State departments of agriculture to promulgate regulations to carry out the pilot program in the States in accordance with the purposes of this section.
>>
>> (2) Industrial hemp

> The term "industrial hemp" means the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.
>
> (3) State department of agriculture
>
> The term "State department of agriculture" means the agency, commission, or department of a State government responsible for agriculture within the State.

Id.

It is noteworthy that Congress did not amend the CSA by enacting 7 U.S.C. § 5940. The statute does not alter or change the DEA registration requirements, the CSA Import Export Act provisions, or any other requirements of the CSA. This statute does not amend the definition of marijuana under the CSA nor does the statute affect the many other requirements of the CSA or the schedules or classification system contained in the CSA. Congress could have amended the CSA's provisions regarding the manner in which cannabis sativa L. could be acquired for the programs permitted by 7 U.S.C. § 5940 but did not do so. Rather, the statute only created a limited exception or safe harbor to allow certain institutions of higher education and state departments of agriculture to grow a specific type of cannabis sativa L. for research purposes. Thus, the provisions of the CSA still apply to the manner in which cannabis sativa L. is acquired by the entities involved in these programs and all other aspects of these programs.

Under 7 U.S.C. § 5940, the grower must be (1) an institution of higher education as defined by certain federal statutes; (2) state department of agriculture; or (3) a person or entity growing the industrial hemp under the auspices of a state department of agriculture pilot project program. No one can independently engage in growing or cultivating cannabis sativa L. under

this statute. The CSA still prohibits such activities. See 81 Fed.Reg. 53395-96 (Aug. 12, 2016); ECF No. 19-3.

7 U.S.C. § 5940 places various constraints and limitations on the permitted programs which are in addition to the requirements imposed by the CSA. For example, the growth and cultivation of industrial hemp can only take place in accordance with an agricultural pilot program to study the growth, cultivation, or marketing of industrial hemp as established by an institution of higher education or a state department of agriculture in a state where the production of industrial hemp is otherwise legal; hemp plants and seeds may not be transported across state lines; the person growing the hemp must be licensed, registered and authorized to conduct research under the agricultural pilot program; the plant and its derivatives must have a very limited THC level; and the other requirements of the statute must be met. See 7 U.S.C. § 5940; ECF No. 19-3.

The limited exception to the CSA created by 7 U.S.C. § 5940 does not alter the requirements of the CSA that apply to the manufacture, distribution, and dispensing of products containing controlled substances. Persons and entities who manufacture, distribute, or dispense products derived from cannabis plants are still subject to and must adhere to the legal duties and conditions imposed by the CSA. See ECF No. 19-3.

If a person or entity fails to qualify for the exemption under 7 U.S.C. § 5940, then the person or entity growing or manufacturing "industrial hemp" is subject to and in violation of the CSA. See Monson v. Drug Enforcement Administration, 589 F.3d 952, 960-61 (8th Cir. 2009) (The CSA prohibits growing or manufacturing cannabis in all species of plants, and CSA prohibition does not distinguish between cannabis grown for drug use and that grown for industrial use); United States v. White Plume, 447 F.3d 1067 (8th Cir. 2006) (CSA prohibits

growing of industrial hemp no matter which cannabis species is involved or the level of THC in the plant/product); Menominee Indian Tribe of Wisconsin v. Drug Enforcement Administration, 190 F.Supp.3d 843 (E.D.Wis. 2016). See also United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 490-91 (2001) (since there was no medical exception under the CSA for marijuana and cooperative did not qualify under the research project exception, cooperative was subject to CSA prohibition against possession and distribution of marijuana).

If a person or entity is licensed by the state to participate in a state pilot project program created under 7 U.S.C. § 5940, the person or entity is still subject to the CSA but is allowed to grow industrial hemp as defined under the statute. As an agent of the state, the person or entity participating in the pilot project cannot exceed the limits of the state's Schedule I registration under the CSA. See United States v. Vamos, 797 F.2d 1146, 1153 (2d Cir. 1986), cert. denied, 479 U.S. 1036 (1987) ("Such staff members may only distribute controlled drugs by virtue of the same limited privilege that shields the practitioners whom they assist."). Thus, the participants licensed by the WVDA to participate in the state pilot program are subject to the same constraints and limitations imposed on the WVDA by the CSA and the registration issued by the DEA.

### III. THE DEFENDANTS ARE IN VIOLATION OF THE CSA

#### A. The Acquisition of the Cannabis Seed Violated The CSA

In this case, the defendants are in clear violation of the CSA. Since they had no registration from the DEA to manufacture, produce, or possess a Schedule I substance, they could only manufacture, produce, or possess the cannabis seed to produce industrial hemp as an agent of the WVDA under 21 U.S.C. § 822(c) through the pilot project program of the WVDA authorized under 7 U.S.C. § 5940. Under the DEA's registration issued to the WVDA, it is

undisputed that the State of West Virginia's DEA registration only allowed the State of West Virginia to import cannabis seed from outside the United States to be used in the pilot project program according to 7 U.S.C. § 5940. While the program participant had to locate and purchase the seed, the WVDA had to acquire the import permit on behalf of the program participant, have the seed shipped to the WVDA, and then the WVDA would deliver the seed to the program participant. See ECF No. 19-7 at p. 2.[2]

Under federal law, a person or entity with a DEA registration can only act "to the extent of their registration…" 21 U.S.C. § 822(b). See also United States v. Alerre, 430 F.3d 681, 689-90 (4th Cir. 2005) (can only act to the extent permitted by the DEA registration). Since the defendants were participating in the pilot project program through the WVDA, they could not acquire the cannabis seed except to the extent permitted by the WVDA's DEA registration. The DEA registration limited them to the acquisition of only imported seed through the WVDA. The WVDA's registration did not permit acquisition through other sources. To hold otherwise, would allow the defendants, as agents, to achieve a level of authority beyond the scope of the registration granted by the DEA to their principal, the WVDA.

Defendants Mallory and CAMO HEMP WV LLC ("CAMO") clearly understood this limitation. Their project description attached to both their original and amended applications specifically stated that they were acquiring the cannabis seed through the WVDA. See ECF Nos. 19-5 at p. 2; 19-13 at p. 7. Moreover, Mallory and CAMO provided a pamphlet to Kale and Grassy Run Farms. In that pamphlet, Mallory and CAMO acknowledged that federal law prohibited them from acquiring cannabis seed across state lines. See ECF No. 19-6 at p. 8 of 9. However, the seed involved in this case was not imported under a DEA permit acquired by the

---

[2] The WVDA was also limited under the import and export provisions of the CSA to the limits of the DEA registration. See 21 U.S.C. § 958(b).

WVDA.  It is undisputed that the seed was purchased by defendants Mallory and CAMO from Hickman Seed & Grain Company, a company based in Clinton, Kentucky, and transported across state lines.  See ECF No. 15 at pp. 6-9.[3]

Although Mallory and CAMO claim that they complied with state law in the manner in which they acquired the seed, that argument does not circumvent the requirements of the CSA.  The seed was acquired in violation of the CSA (they had no DEA registration to acquire and possess cannabis seed) and in violation of the DEA registration issued under the CSA to the WVDA for the pilot project program under 7 U.S.C. § 5940 which limited acquisition of the seed to imported seed from foreign countries.  The CSA controls over any state law which would allow acquisition of the seed contrary to the CSA due to the Supremacy Clause of the Constitution.  See Gonzales v. Raich, 545 U.S. 1, 29 (2005) ("Second, limiting the activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place respondents' activities beyond congressional reach.  The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

The acquisition of the cannabis seed by Mallory and CAMO in this case is a violation of the CSA and is prohibited by the registration issued by the DEA to WVDA's pilot program.  The seed was not imported as required by the DEA registration issued to the WVDA, and Mallory and CAMO had no independent DEA registration to acquire the Schedule I cannabis seed from any other source.  Since the transaction involving the acquisition of seed by CAMO and Mallory is in violation of the CSA and outside the WVDA pilot program, then the plants grown from that

---

[3] Defendants Mallory and CAMO cited a publication from the Kentucky Department of Agriculture ("KDA") in support of their position at the hearing.  See ECF No. 19-12.  However, the KDA stated in that document: "All transfers out-of-state to other research pilot programs are at your own risk.  KDA does not regulate hemp materials outside the Commonwealth of Kentucky." Id. at p. 1.  KDA obviously recognized that transfers across state lines is the jurisdiction of the DEA through the CSA and is controlled by federal and not state law.

illegal seed, with the assistance of Kale and Grassy Run Farms, are likewise illegal even if the plants are grown for research or industrial hemp purposes. Oakland Cannabis Buyers' Cooperative, 532 U.S. at 490-91; Monson, 589 F.3d at 960-61; White Plume, 447 F.3d at 1070-74.

### B. Mallory and CAMO Have Otherwise Violated the Terms of the Project Description and the Other Provisions of the CSA

Mallory and CAMO have violated the project descriptions submitted as part of the WVDA pilot project program and the CSA in other respects. They failed to place security at the site of the project and are now attempting to sell the crop for commercial purposes across state lines.

Under the project description and the CSA, Mallory and CAMO were required to undertake certain security measures to prevent the crop from being diverted. These measures were to include signage, fencing, and placement of game cameras. None of these security measures were instituted, which constituted a violation of the project description. See ECF No. 19-5 at p. 3; ECF No. 19-13, at p. 7. These security failures also violated the CSA's security requirements. See Gonzales, 545 U.S. at 28-29; 21 U.S.C. §§ 821-830; 21 C.F.R. §§ 1309.71-.73.

In addition, the project description attached by Mallory and CAMO to their original and amended applications indicated that the cannabis was being grown as a "Research Project." The project description stated: "This project will be focused on determining the soil supply and nutritional demand requirements of industrial hemp for fiber and seed." See ECF Nos. 19-5 at p. 2; 19-13 at p. 6. The project description states nothing about marketing or selling the crop for commercial purposes at the end of the project. See ECF No. 19-5, 19-13.

9

Mallory and CAMO stated in court that they intend to sell the crop for commercial purposes. This violates the project description which was limited to a research project. In addition, such an act would violate the CSA, as Mallory and CAMO do not have a DEA registration to permit such an activity. Such a registration would also be required to sell (distribute) the crop because it is clearly a Schedule I controlled substance. See 21 U.S.C. §§ 822, 823.

### IV. SECTION 729 OF THE CONSOLIDATED BUDGET ACT OF 2018 IS NOT APPLICABLE IN THIS CASE

Section 729 of the Consolidated Budget Act of 2018, Pub.L.No. 115-141 is not applicable to this case. First, funds used by the DEA and the DOJ to enforce provisions of the CSA are not being used in contravention of 7 U.S.C. § 5940. That statute does not prohibit enforcement of the CSA. Second, the prohibition of the use of federal funds by DOJ and DEA to enforce the CSA to prohibit the transportation, processing, sale, or use of industrial hemp, or seeds of such plant is only applicable if the industrial hemp is grown or cultivated in accordance with 7 U.S.C. § 5940 (i.e., the pilot project program). Here, the defendants did not grow or cultivate the industrial hemp in accordance with 7 U.S.C. § 5940, as they used seed from a non-imported source. The DEA registration for the WVDA required that the seed for the industrial hemp pilot project program be imported from a foreign source. In addition, the project description submitted by Mallory and CAMO stated that the seeds would be acquired through the WVDA. However, Mallory and CAMO violated the terms of the project description and acquired seeds outside the limitation of the DEA registration of the WVDA. See ECF Nos. 19-5 (p. 2), 19-7(p. 2), 19-13 (p. 7 of 9). Since Mallory and CAMO were agents of the WVDA under the pilot project program, their acquisition of the industrial hemp seed from a Kentucky company across state lines violated the limitations imposed upon them by the WVDA's DEA registration

and the terms of their project description. These violations indicate that Mallory and CAMO did not act in accordance with 7 U.S.C. § 5940 because they failed to comply with the requirements imposed upon and by the WVDA pilot project program and federal law.

## V. DEFENDANTS' RELIANCE ON STATE LAW IS WITHOUT MERIT AS THE CSA PREEMPTS STATE LAW IN THIS CASE

The defendants make a series of arguments relying on state law in this case in order to try to avoid the application of binding federal law. The Supreme Court has made it clear that the Supremacy Clause makes the CSA binding on the defendants, and their attempted use of state law to avoid the reach of the CSA is without merit. See Gonzales v. Raich, 545 U.S. 1, 29 (2005) ("Second, limiting the activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place respondents' activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

## VI. THE UNITED STATES INCORPORATES THE ARGUMENTS MADE BY ITS COUNSEL IN PRIOR PLEADINGS AND AT THE ORAL ARGUMENT AT THE PRELIMINARY INJUNCTION HEARING

The United States also incorporates by reference the arguments and legal positions previously expressed in the Verified Complaint (ECF No. 3 and all attached exhibits), its motion for a temporary restraining order and a preliminary injunction (ECF No. 1), its memorandum in support of its motion for a temporary restraining order and preliminary injunction (ECF No. 2), and at oral argument at the preliminary injunction hearing. The United States includes all of the evidence included in the exhibits it entered into evidence at the preliminary injunction hearing.

## VII. CONCLUSION

The defendants have engaged in the illegal manufacture, production, distribution, and possession of cannabis in violation of the CSA. They acquired cannabis sativa L. seed in

violation of the CSA, contrary to the pilot project program of the State of West Virginia, in violation of their own project descriptions submitted to the State of West Virginia, and in contravention of the limited DEA registration possessed by the WVDA limiting the pilot project program to using imported seeds. Defendants Mallory and CAMO have even admitted in their own pamphlet sent to defendants Kale and Grassy Run Farms that federal law prohibited the transportation of the seeds across state lines. The overwhelming evidence and the applicable federal law indicate that the defendants have used cannabis sativa L. seed in violation of federal law, and, therefore, the United States is entitled to the requested injunctive relief and the other relief requested in the Verified Complaint.

Respectfully submitted,

**MICHAEL B. STUART**
**United States Attorney**


**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Fred B. Westfall, Jr., Assistant United States Attorney for the Southern District of West Virginia, hereby certify that on September 21, 2018, I electronically filed the foregoing **MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANTS MATTHEW MALLORY AND CAMO HEMP WV LLC TO DISSOLVE EX PARTE RESTRAINING ORDER AND IN OPPOSITION TO PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Carte B. Goodwin
Elise McQuain
Frost Brown Todd, LLC
500 Virginia Street East,
Suite 1100
Charleston, WV 25301

Phillip A. Reale, II
Law Office of Phillip A. Reale, PLLC
300 Summers Street
Suite 980
Charleston, WV 25301
Counsel for defendants Matthew Mallory and CAMO HEMP WV LLC

R. Booth Goodwin II
Tammy J. Owen
Goodwin & Goodwin, LLP
300 Summers Street
Suite 1500
Charleston, WV 25301
Counsel for defendants Gary Kale and Grassy Run Farms, LLC

                                                  **s/Fred B. Westfall, Jr.**
                                                  WV State Bar No. 3992
                                                  Assistant United States Attorney
                                                  P.O. Box 1713, Charleston, WV  25326
                                                  Phone: 304-345-2200
                                                  Fax: 304-347-5443
                                                  E-mail: fred.westfall@usdoj.gov