# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        CIVIL ACTION NO. 3:18-1289

MATTHEW MALLORY,
ALTERNATIVE MEDICINAL OPTIONS LLC,
GARY KALE,
GRASSY RUN FARMS, LLC, their agents,
assigns, attorneys, and all other acting
in concert with the named defendants,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Due to the lapse of congressional appropriations and the impact it has had on the Department of Justice and the United States Attorney's Office, the Honorable Irene C. Berger entered a General Order on December 26, 2018, staying civil cases in this District in which the United States is a party. *Gen. Order Holding Civ. Matters in Abeyance*, Misc. No. 2:18-mc-00196 (Dec. 26, 2018) (Berger, J.). As the lapse of funding has not been resolved, Judge Berger entered a second General Order on January 8, 2019, continuing the stay. *Gen. Order Holding Civ. Matters in Abeyance*, (Jan. 8, 2019) (Berger, J.). Litigants, however, are permitted to seek relief from the stay under both General Orders. On January 3, 2019, Defendants Matthew Mallory (Mr. Mallory) and Commonwealth Alternative Medicinal Options, LLC (collectively the "CAMO Defendants") filed a Motion for Relief from the General Order. ECF No. 55. The Court directed an expedited briefing schedule on the motion, and the motion is now ripe. For the following reasons, the Court **LIFTS THE STAY** and **DISSOLVES** the Preliminary Injunction previously entered in this case.

This case was filed by the United States on September 11, 2018. On that same day, the Court entered an Ex Parte Temporary Restraining Order and scheduled a hearing on the Government's Motion for a Preliminary Injunction for September 17, 2018. ECF No. 5. Following the hearing, the Court converted the Ex Parte Temporary Restraining Order into a Preliminary Injunction, but permitted Defendants to harvest, dry, and mill the hemp.[1] ECF No. 20. The Court prohibited Defendants, however, from transporting or selling any portion of the processed material. *Id*. On October 22, 2018, the Court further clarified that Defendants were not permitted to move the industrial hemp outside of West Virginia without further order of the Court, and they were directed to provide the Court and counsel for the Government a timeline of their future plans for the hemp. ECF No. 37. The CAMO Defendants complied with the Court's Order and filed a response under seal. ECF No. 47.

In the meantime, since the time this action was filed, the CAMO Defendants and the "Grassy Run Defendants," who collectively are Gary Kale and the Grassy Run Farms, LLC, also have filed two separate Motions to Dismiss. ECF Nos. 28 & 34. Additionally, the Government filed a Motion for Leave to File an Amended Verified Complaint. ECF No. 48. While the Court was considering these additional pleadings and the merits of this case, the General Order staying such civil actions was entered.

---

[1] Pursuant to 7 U.S.C. § 5940, "industrial hemp" was defined as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Hemp is now defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Agriculture Improvement Act of 2018, PL 115-334, December 20, 2018, 132 Stat 4490.

The CAMO Defendants now move to lift that stay because certain contractual obligations are at risk that were not in jeopardy at the time the Preliminary Injunction originally was entered. Specifically, according to the Affidavit of Mr. Mallory attached to the motion, the plant material needs to be processed into pure cannabidiol (CBD) isolate at a facility located in Pennsylvania. *Aff. of Matthew Mallory*, at ¶4, ECF No. 55-1. As the processing takes approximately two-and-a-half weeks, Mr. Mallory stated that the product needed to be transported to the Pennsylvania processing facility by January 13, 2019 in order for Defendant Commonwealth Alternative Medicinal Options to meet its contractual obligations to provide the isolate by the end of January. *Id*. at ¶¶2, 5-8. Mr. Mallory further averred that "[t]he profit from the sale of the CBD isolate is integral to the business' future plans and investments." *Id*. at ¶9.

Under the inherent power of the Court, "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *see also Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006) ("[T]he Court has continuing plenary power to modify or dissolve a preliminary injunction applying general equitable principles."); *Notes of Advisory Comm. on Rules,* Fed. R. Civ. P. 60(b) ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief as justice requires."). Interlocutory orders "[can] be reviewed by the district court, on motion or *sua sponte*[.]" *Fayetteville*, 936 F.2d at 1472.

It is not necessary to label such reviews under a particular rule of civil procedure. *Id.* However, "[b]ecause a decision to issue a preliminary injunction is appealable pursuant to 28

U.S.C. § 1292(a)(1), it is a 'judgment' for the purposes of the Federal Rules of Civil Procedure [Rule 54(a)]." *Centennial Broad*, 433 F. Supp. 2d at 733; *see also Cap. Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (stating that Rule 54(b) recognizes the district court's inherent power to reconsider an interlocutory order as justice requires). Under Rule 54, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The Fourth Circuit has been careful to note that "a review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments." *Fayetteville*, 936 F.2d at 1472. Reconsideration cannot be treated under Rules 60 or 59, as these rules apply only to final judgments.[2] *Id.*; *see also Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

A change in circumstances makes reconsideration of an interlocutory order appropriate. "[A]n injunctive order may be modified or dissolved in the discretion of the court when conditions have so changed that it is no longer needed or as to render it inequitable." *Tobin v. Alma Mills*, 192 F.2d 133, 136 (4th Cir. 1951) (citations omitted); *see also Dombrowski v.*

---

[2]While interlocutory orders are not subject to the strictures of Rule 60(b), some courts have turned to the equitable principles under this rule for guidance. *Centennial Broad*, 433 F. Supp. 2d 730; *McAfee v. Boczar*, No. 3:11CV646, 2012 WL 2505263 (E.D. Va. June 28, 2012); *Michael T. v. Crouch*, No. 2:15-CV-09655, 2018 WL 1513295 (S.D. W. Va. Mar. 26, 2018). However, the Fourth Circuit has signaled "vigorous disagreement" with the strict application of Rule 60 standards on interlocutory orders and found such to be a reversible error. *Fayetteville*, 936 F.2d at 1471.

*Pfister*, 380 U.S. 479, 492 (1965) ("[T]he settled rule of our cases is that district courts retain power to modify injunctions in light of changed circumstances."). "A court errs when it refuses to modify an injunction or consent decree in light of such changes." *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (citation omitted). Thus, **"**a district court may modify a preliminary injunction in light of subsequent changes in the facts or the law, or for any other good reason." *Ohio Valley Envt'l. Coal. v. United States Army Corps of Engineers*, No. CV 3:08-0979, 2009 WL 10688886, at *1 (S.D. W. Va. Aug. 21, 2009) (citing *Centennial Broadcasting*, 433 F. Supp. 2d at 733) (internal quotations omitted).

In considering these factors, the Court recognizes that the passage of time has changed the circumstances of Defendants. It is unrefuted that Commonwealth Alternative Medicinal Options has contractual obligations to provide the isolate by the end of January that will not be met if the plant material is not immediately processed. Additionally, it is not disputed that the sale of the CBD isolate is essential to the future plans of the business. Unquestionably, Defendants will experience certain, significant harm if the Preliminary Injunction is not immediately dissolved to allow the hemp to be processed and sold. Although the Government argues Defendants' failure to meet their contractual obligations is a product of their own making by not adhering to the project description and relevant laws, the Court has become increasingly doubtful of the Government's case on the merits.[3] Additionally, on December 20, 2018, the President signed into law the Agricultural Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490 ("2018 Farm Bill"). Despite being enacted after the issues in this case arose, the

---

[3] To be clear, the Court is not making a final judgment on the merits of the case and reserves the right to further consider the issues.

2018 Farm Bill expresses congressional intent that current public policy supports States exercising primary control over hemp production. In addition, Section 12619 of the Farm Bill removes hemp from the controlled substance list and from under the jurisdiction of the U.S. Department of Justice. *See* § 12619 of the 2018 Farm Bill, Conforming Changes to Controlled Substances Act (providing "[t]he term 'marihuana' does not include—(i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946").

The Government also argues that, even if the Controlled Substance Act does not apply to the CBD isolate, it still is regulated by the Food Drug and Cosmetic Act ("FDCA") and under the authority of the Commissioner of the Food and Drug Administration ("FDA"). According to the Government, the FDA only has approved the product for use in Epidiolex, an epilepsy drug. Therefore, the Government insists it is entitled to an injunction because its use is prohibited by the FDCA and the Commissioner of the FDA. However, as argued by Defendants, the mere potential of a downstream use that may violate certain federal regulations does not entitle the Government to an injunction on producing and selling the CBD isolate here. In fact, there is no evidence before this Court that Defendants will be adding the CBD isolate to food or health products or making unsubstantiated health claims about the benefits of CBD without approval of these agencies. Therefore, the Court will not extend the injunction on this ground.

Accordingly, in this Court's inherent authority and for the foregoing reasons, the Court **GRANTS** the CAMO Defendants' Motion for Relief from the General Order Holding Civil Matters in Abeyance, **LIFTS THE STAY**, and **DISSOLVES** the Preliminary Injunction previously issued by the Court. Defendants shall be able to immediately transport the product to

the Pennsylvania facility for processing and sale of the CBD isolate. The Court cautions Defendants, however, its decision rests on the standard for reconsidering a preliminary injunction and the ultimate merits of this case have not been resolved. Additionally, if Defendants intend to tout the health benefits of CBD or add it to food or health products without approval it risks running afoul of FDCA and FDA regulations.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 17, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE