**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                     Civil Action No. 3:18-cv-01289

MATTHEW MALLORY,
ALTERNATIVE MEDICINAL OPTIONS, LLC,
GARY KALE, GRASSY RUN
FARMS, LLC, their agents,
servants, assigns, attorneys, and all
others acting in concert with the
named defendants,

       Defendants.

**MOTION OF THE UNITED STATES OF AMERICA TO TEST CANNABIS ("HEMP")
CROP OF THE MALLORY DEFENDANTS INVOLVED IN THIS CASE**

       The United States moves the Court to enter an order allowing it to test the cannabis crop involved in this case which the Mallory defendants claim is "hemp" and has transported from West Virginia. This request is based on the grounds previously asserted in this civil action and also on the following grounds:

       1.      Under federal law, cannabis harvested is classified as "hemp" only if the harvested crop contains no more than .3% of THC. See 7 U.S.C. § 5940. If the harvested cannabis contains in excess of .3% THC, then it is classified as "marijuana" under federal law. 21 U.S.C. § 802(16). The only way to determine whether an alleged "hemp" crop meets the statutory requirements to be classified as "hemp" rather than "marijuana" is to perform THC level testing on representative samples from the crop. This statutory THC standard is set by federal law, not state law. See 7 U.S.C. § 5940(b)(2); 21 U.S.C. § 802(16).

2.      The WVDA made it clear in its application materials that all purported "hemp" crops had to be tested for THC levels before the crop could be used.  The WVDA materials state that licensees are required to notify the WVDA at least 30 days in advance before harvesting the "hemp" crop so that THC level testing could be arranged.  The materials also made it clear that any crop tested and found to have a THC level in excess of .3% could be destroyed.[1]  This was discussed at the original hearing in this case, and the Mallory defendants presented an exhibit containing this requirement to the Court.  See ECF 16-1 at p. 3 ("Once the crop is established the applicant is responsible for notifying the WVDA 30 days before the projected harvest date. The WVDA will arrange to visit and collect sample/s to verify the THC content is below 0.3%. (*The cost of the visit, sampling and testing is the responsibility of the applicant. Costs can be estimated by the 'Industrial Hemp Sampling Invoice'.  If the crop is tested and found to be more than the amount allowed, destruction may be required.*").") (emphasis in the original).  The United States also informed the Court of this requirement and presented a similar document from the WVDA into evidence at the injunction hearing.  See also ECF No. 19-7 at p. 2.[2]

3.      As these documents and federal law make clear, the burden was clearly on the Mallory defendants to send the required notice and make the necessary arrangements with the WVDA for the THC level testing to take place before the crop was moved out of West Virginia. Id.  While the Mallory defendants argue that the United States should have requested that THC level testing be performed earlier, it was actually the burden of the Mallory defendants—not that of the United States—to make THC level testing arrangements with the WVDA.  That simply

---

[1] The testing was required to make sure that the cannabis crop was not "marijuana" as defined in 21 U.S.C. § 802(16).

[2] The Mallory defendants were aware of this requirement when they applied for a hemp grower's license in 2017 with the WVDA and in 2018 when they submitted amended applications for a hemp grower's license.  See ECF Nos. 16-1, 19-7.

was not done here.  There is no dispute that the crop was not tested as required.  The Mallory defendants could have made these arrangements at any time during these proceedings after the crop had been dried, but they failed to do so.

4.    The WVDA cannot now perform the requisite THC level testing required by federal law since the crop is now located in Pennsylvania and no longer under the jurisdiction of the State of West Virginia.  Moreover, the WVDA has stated in a recent article that its equipment to perform such testing is now broken, and the WVDA does not now have the capability to perform such testing.  See ECF No. 66-1 at p. 3 ("Crescent Gallagher, a spokesman for the West Virginia Department of Agriculture, which regulates industrial hemp, said the department has not tested the farmers' crop since the harvest, citing a broken machine.").

5.    As a result, the United States requests that it be allowed to test THC level of the crop to determine whether the crop meets the "hemp" standard under 7 U.S.C. § 5940 or whether it is "marijuana" as defined under 21 U.S.C. § 802(16).  The THC level testing is to determine compliance with a federal standard.  If the crop is "marijuana" as defined by 21 U.S.C. § 802(16) and not "hemp," then the United States will request that it be allowed to enforce its right to seize and destroy the crop.  See 21 U.S.C. § 881(g)(1).  See Gonzales v. Raich, 548 U.S. 1 (2005) (upholding DEA's destruction of plants determined to be marijuana under the CSA purportedly grown pursuant to a state medical marijuana program).  The burden is on the Mallory defendants to prove that the crop is not "marijuana" as defined by the CSA.  See 21 U.S.C. § 885(a)(1); 21 C.F.R. § 1308.35.

6.    Counsel for the Mallory defendants was quoted in a recent newspaper article as stating:  "Goodwin said although the move to request the THC testing 'reeks of desperation,' and ***Mallory has no problem seeing the crop tested***."  See ECF No. 66-1 at p. 3 (emphasis added).

Based on the statement of counsel for the Mallory defendants in the media, the Court should allow the United States to conduct the requested THC level testing of the alleged "hemp" crop since the Mallory defendants have "no problem seeing the crop tested." Id.

7.      The United States should be allowed to test the alleged "hemp" crop to determine whether it is actually "hemp" as defined under 7 U.S.C. § 5940 or "marijuana" as defined by 21 U.S.C. § 802(16).  The United States has the necessary resources and capability to perform the required THC level testing, and the testing can be performed expeditiously.  Once the Court allows the United States to test the cannabis crop, the United States will send appropriate personnel to the site where the crop is located, and representative samples will be taken from the crop.  The samples will be tested for quantitative THC levels at a certified lab.  The United States stands ready to perform THC level testing on the alleged "hemp" crop of the Mallory defendants in an expeditious fashion. [3]

8.      The reason for the required testing is simple.  If the crop is not truly "hemp" as defined by federal law, the substance being introduced into commerce is "marijuana," an illegal Schedule I substance under the CSA.  21 U.S.C. § 802(16).  In addition, "marijuana" is an illegal drug under the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq*.  A significant public safety issue is involved, and testing is necessary to protect the public.  That is why the testing requirement existed in pilot project programs permitted under 7 U.S.C. § 5940 and the testing requirement remains under the Agricultural Improvement Act of 2018, Public Law No: 115-334, § 10113 (Sections 297B & 297C).  The federal laws enacted by Congress only permit

---

[3] It should be noted that THC level testing of "hemp" is also mandated by the Agricultural Improvement Act of 2018, Public Law No: 115-334, § 10113 (Sections 297B & 297C) whether the crop is grown subject to an approved state hemp program or subject to a USDA plan.  This testing must be completed before the "hemp" can be placed in commerce.  Thus, this federal testing requirement remains in effect to ensure that crops grown as "hemp" are actually "hemp" and not "marijuana."

cannabis classified as "hemp" to be placed into commerce if the THC level is .3% or less. Federal law and Congress make it illegal to place into commerce cannabis that has a THC level exceeding .3%.

9.     The United States will send trained personnel to the site where the cannabis crop is located to collected representative samples for testing.  The representative samples will then be transported to a certified lab selected by the United States for testing, and the representative samples will then be subjected to quantitative THC level testing.  The methodology used will be the same methodology which has been accepted by federal courts across the United States.

Therefore, the United States requests that it be allowed to perform THC testing of the cannabis crop involved in this case.  The United States requests that its personnel be allowed to collect representative samples from the cannabis crop involved in this case and to send those samples to a certified lab selected by the United States for testing THC levels.  The United States requests that it be allowed to perform this testing as soon as possible.  The United States also requests such other and further relief as the Court deems appropriate.

Respectfully submitted,

**MICHAEL B. STUART**
**United States Attorney**

**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Fred B. Westfall, Jr., Assistant United States Attorney for the Southern District of West Virginia, hereby certify that on January 23, 2019, I electronically filed the foregoing **MOTION OF THE UNITED STATES OF AMERICA TO TEST CANNABIS ("HEMP") CROP OF THE MALLORY DEFENDANTS INVOLVED IN THIS CASE** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Carte B. Goodwin
Elise McQuain
Frost Brown Todd, LLC
500 Virginia Street East,
Suite 1100
Charleston, WV 25301

Phillip A. Reale, II
Law Office of Phillip A. Reale, PLLC
300 Summers Street
Suite 980
Charleston, WV 25301
Counsel for defendants Matthew Mallory and CAMO HEMP WV LLC

R. Booth Goodwin II
Tammy J. Owen
Goodwin & Goodwin, LLP
300 Summers Street
Suite 1500
Charleston, WV 25301
Counsel for defendants Gary Kale and Grassy Run Farms, LLC

<u>**s/Fred B. Westfall, Jr.**</u>
WV State Bar No. 3992
Assistant United States Attorney
P.O. Box 1713, Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov